HESSIAN HILLS COUNTRY CLUB, INC., Plaintiff, and ABE FISCHER, Respondent, *v.* THE HOME INSURANCE COMPANY, Appellant.

HESSIAN HILLS COUNTRY CLUB, INC., Plaintiff, and ABE FISCHER, Respondent, *v.* HARTFORD FIRE INSURANCE COMPANY et al., Appellants.

(Submitted April 25, 1933; decided June 6, 1933.)

*Almond D. Fisk* and *Charles A. Taussig* for appellants.

*Alfred B. Nathan* and *A. J. Asche* for respondent.

LEHMAN, J. In November, 1930, the buildings, together with their contents, owned by the Hessian Hills Country Club, Inc., were damaged or destroyed by fire. The property was insured by the defendant insurance companies. By an indorsement upon the policies it was provided: " Loss, if any, payable to Abe Fischer, mortgagee, as interest may appear." At the time of the fire Abe Fischer owned a mortgage in the sum of $55,000 covering the property. Proofs of loss were filed by the mortgagor. Two actions were brought against the defendant insurance companies to recover the loss caused by the fire. In both actions the mortgagor and mortgagee joined as plaintiffs. Each of the answers of the defendant insurance companies, in addition to denials, set up three affirmative defenses. In the first affirmative defense it is alleged that the mortgagor's proof of loss contained a false and fraudulent statement that the cause of the fire was unknown to the assured though the affiant well knew

that the fire was set willfully and with the connivance and knowledge and by the direct act of an agent of the mortgagor for the purpose of defrauding the defendants. In the second affirmative defense it is alleged that the mortgagor willfully and maliciously set or caused to be set on fire the insured property. In the third affirmative defense it is alleged that the mortgagor falsely and fraudulently stated that certain articles of personal property were located in the premises at the time of the fire.

There can be no doubt that the affirmative defenses, if established by proof, would defeat any cause of action under the policies in favor of the mortgagor; but if the mortgage had contained the standard mortgagee clause providing that as to the interests of the mortgagee the insurance " shall not be invalidated by any act or neglect of the mortgagor," there could also be no doubt that the affirmative allegations contained in the answer would constitute no defense to an action brought by the mortgagee. These insurance policies do not contain that clause; but the mortgagee, claiming that this clause must be read into the policies by implication, moved for summary judgment against the defendants. The Appellate Division reversed the order of Special Term, which denied the motion of the plaintiff, and granted the motion. The orders of the Appellate Division provide that the answers of the defendants be stricken out as against the mortgagee; that the case be placed upon the day calendar for assessment of damages and that the action be severed as to the plaintiff Hessian Hills Country Club.

The jury has assessed the damages caused by the fire at the sum of $50,000, and final judgment accordingly has been entered in favor of the mortgagee. The defendants have appealed directly to this court from that final judgment. That appeal brings up for review only the determination of the Appellate Division upon the motion for summary judgment. (Civ. Pr. Act, § 590.) The defend-

ants upon the motion for final judgment made no attempt
to sustain their denials of any of the allegations of the
complaint. Concededly these denials were merely formal,
and there is no dispute that the policies were valid at their
inception and covered the property damaged by fire.
The affidavit of the plaintiff mortgagee verified the cause
of action and sufficiently stated the plaintiff's belief that
there was no defense to the action, as required by rule 113
of the Rules of Civil Practice.

The defendant insurance companies' opposition to the
motion was based on the grounds: *First,* that the mort-
gagee has no right to recover, when under the terms of the
policy the insurance is invalidated by the fraud and
wrong of the mortgagor; and *second,* that in any event the
mortgagor is a necessary party to any cause of action to
recover under the policy, even if brought by the mort-
gageee, and that the action, therefore, could not be
severed. No affidavit or proof was submitted to show
that the allegations of the affirmative defense were true
in fact, or even that there was any ground for belief that
the mortgagor has been guilty of the wrongful acts
charged in the affirmative defenses. The decision of the
Appellate Division rests both upon its conclusion that the
mortgagee's right to recover could not be defeated by
the alleged fraud and wrong of the mortgagor, and that
the defendant has not shown any facts " implicating
either the mortgagee or the mortgagor in any of the
wrongs set out in the answer and pleaded as defenses."
(236 App. Div. 615.) Before we consider the sufficiency
of the affirmative allegations of the answer to constitute
a defense to the mortgagee's cause of action, the question
arises whether upon this motion any burden was placed
upon the defendants to show that there was any sub-
stantial basis for the allegations contained in the answer.

The defendants were required by the rule to show " facts
sufficient to entitle them to defend." Doubtless if the
mortgagor had joined the motion for summary judgment
attacking the sufficiency of the defenses both on the law

and the facts, a burden would have been placed upon the defendants to show at least that the allegations contained in the affirmative defenses were not sham. Here the attack upon the defenses was based only on their legal sufficiency. True, the mortgagee in his affidavit did allege certain facts which might cast doubt upon the good faith of the defendants in interposing said affirmative defenses even against the mortgagor, but the affidavit itself states: "Deponent merely points to these facts as indicative of the sham nature of the affirmative defenses in this action, even though, as has been pointed out, these defenses whether valid or invalid do not apply to your deponent." An affidavit made by the president of the mortgagor was also presented in support of the motion, though the mortgagor was not a party to the motion. In that affidavit the mortgagor's president states, in persuasive manner, facts which might raise grave doubts as to the good faith of the defendant insurance companies, but that affidavit proceeds expressly upon the assumption that "the question of the merits of the affirmative defenses is wholly immaterial as far as the mortgagee is concerned under the Standard Mortgagee Clause of the State of New York. However, your deponent, as a member of the Bar for thirty years cannot leave unanswered the libellous statements which are interposed as defenses by the defendant." It is clear from a reading of the affidavits that the real purpose of the motion itself was to disassociate the right of the mortgagee to recover from any question of law or fact which might cast doubt upon the mortgagor's right to recover under the policy. Indeed, in an affidavit submitted by the mortgagee, in reply to the affidavit presented by the defendants, it is stated: "There is really only one issue presented concerning the right of Abe Fischer to succeed upon this motion, and that is whether the standard mortgagee clause, which gives the mortgagee immunity from any act or neglect on the part of the mortgagor, shall be deemed attached to this policy." Upon a motion for summary

judgment a defendant is under no burden to show that affirmative allegations in the defense are not sham when the attack on such allegations is made solely on the ground that they are insufficient in law.

The obligation of an insurance company under a policy of fire insurance is limited and defined by the terms of the policy itself. It may, if it chooses, make an independent contract with the mortgagee whereby insurance payable to the mortgagee shall not be invalidated by any act or neglect of the mortgagor. It makes such contract when the standard mortgagee clause is incorporated in the policy. (*Goldstein* v. *National Liberty Ins. Co.*, 256 N. Y. 26; *Savarese* v. *Ohio Farmers Ins. Co.*, 260 N. Y. 45.) Where, however, the contract of insurance is with the mortgagor and the undertaking to pay the loss to the mortgagee is collateral and dependent upon the principal undertaking, the mortgagee cannot recover if there has been a breach of condition of the policy by the mortgagor. (*Moore* v. *Hanover Fire Ins. Co.*, 141 N. Y. 219.) Since here the allegations of the affirmative defense are unquestionably sufficient to defeat any cause of action under the policy by the mortgagor, the mortgagee's motion for summary judgment should, on the mortgagee's own theory, be granted, only if the policy contains, expressly or by fair implication, an independent promise to pay the loss to the mortgagee even though there is no liability under the policy to the mortgagor.

Under the standard fire insurance policies in use in this State prior to 1918, the insurer, even without the standard mortgagee clause, did enter into an independent obligation towards the mortgagee to whom the loss was payable which was not, in all respects, collateral to the insurer's obligation to the mortgagor. The standard insurance policy then contained, in lines numbered 56 to 59, inclusive, this provision: "If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or of any person or corporation

having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of such insurance relating to such interest as shall be written upon, attached, or appended hereto." The " conditions hereinbefore contained " related to matters affecting the risk, either when incurred or while subsisting. The later provisions related in the main to conditions to be complied with by the " insured " after a loss has occurred. Construing this form of policy, this court decided that the later conditions applied only to the mortgagor, not to the mortgagee (*McDowell* v. *St. Paul F. & M. Ins. Co.*, 207 N. Y. 482, 486), but that in the absence of any other provision in the policy affecting the insurance of the mortgagee, the earlier conditions relating in terms to the " insured or mortgagor " applied to the mortgagee as well as to the mortgagor. (*Heilbrunn* v. *German Alliance Ins. Co.*, 202 N. Y. 610.) A different construction was reached in some other jurisdictions. There it was held that even the conditions contained in the policy before lines 56 to 59 did not apply except as expressed in other provisions " written upon, attached or appended to " the policy. (Cf. *Senor & Muntz* v. *Western Millers' Mut. Fire Ins. Co.*, 181 Mo. 104; Richards on Law of Insurance [4th ed.], p. 474.)

In 1918, by the enactment of section 121 of the Insurance Law (Cons. Laws, ch. 28), the form of the standard fire insurance policy was changed. The new policy eliminated lines 56 to 59 of the earlier standard policy. It added lines 116 to 125: " On payment to such mortgagee of any sum for loss or damage hereunder, if this company shall claim that as to the mortgagor or owner no liability existed, it shall to the extent of such payment be subrogated to the mortgagee's right of recovery and claim upon the collateral to the mortgage debt but without impairing the mortgagee's right to sue, or it may pay the mortgage debt and acquire an assignment thereof and of

the mortgage. Other provisions relating to the interests and obligations of such mortgagee may be added hereto by agreement in writing."

It is said that it was the intention of the Legislature by this change to eliminate distinctions between those pro-. visions of the contract which had preceded lines 56 to 59 in the earlier standard form, and those which followed those lines and thus to provide that none of the conditions applicable to the mortgagor or insured shall apply to the interest of the mortgagee. That the Legislature intended to eliminate the distinction between the provisions is clear, but under the language both of the statute and the policy, the effect of such elimination is, in the absence of other agreement, to make all provisions applicable to the interests of the mortgagor and mortgagee alike unless " other provisions relating to the interests and obligations of such mortgagee " are " added hereto by agreement in writing." Under the earlier standard form of policy we had held that in spite of the provision that " the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto," these conditions applied in the absence of any contrary provision " written upon, attached or appended " to the policy (*Heilbrunn* v. *German Alliance Ins. Co.*, *supra*), and we there pointed out that though this construction might place undue hardship upon the insurance companies, " the remedy of the companies is to apply to the Legislature for leave to modify, as to the matters indicated, the standard fire insurance policy of the State of New York." So it would seem clear that the conditions of the new form of policy applied to the mortgagee's interest, unless " other provisions relating to the interests and obligations of such mortgagee " are added thereto by agreement in writing. (*Orenstein* v. *Star Ins. Co.*, 10 Fed. Rep. [2d] 754; Richards on Law of Insurance, p. 472.) Otherwise the standard mortgagee clause would be a mere tautological superfluity.

The argument is advanced that the provision in the policy providing for subrogation by the insurer where payment is made to the mortgagee, though no liability existed as to the mortgagor, shows that the insurance of the mortgagee was not intended to be invalidated by any act or neglect of the mortgagor, but that argument loses force by reason of the fact that immediately preceding that clause, provision is expressly made for liability, in some specified instances, to a mortgagee, though none exists to the mortgagor.

The question remains whether the standard mortgagee clause must be read into the policies by implication, though not contained in the body of the policies nor in any rider attached to the policies. That question has not yet been passed upon by this court. In *Greenwich Bank* v. *Hartford Fire Ins. Co.* (222 App. Div. 219) the Appellate Division of the first department reached the conclusion that where loss under a policy is payable to a mortgagee the standard mortgagee clause must be read into the policy though not attached thereto. Though we affirmed the decision of the Appellate Division (250 N. Y. 116), the affirmance by this court was on other grounds, and that question was not decided. It must be decided now.

Section 121 of the Insurance Law provides for a standard blank form of policy of fire insurance, and that " no other or different provision, agreement, condition or clause shall be in any manner made a part of such contract," except as provided by that section. The standard form of policy does not contain the standard mortgagee clause, but subdivision 3 of that section provides that: " in the case of a mortgagee not named in the policy as the insured, such provisions may be added as shall not be inconsistent with or a waiver of any of the provisions of the said standard policy relating to mortgage interests but if so added shall include the provisions of a standard rider or indorsement relating to such interest the form

of which shall have been approved by the Superintendent of Insurance and filed in his office as hereinafter provided." By subdivision 10 of the same section it is provided that the Superintendent is empowered to make examinations in order to determine whether any particular agreement ought to be standarized and " he shall thereupon prepare and file in his office such standard form of rider, indorsement, clause, permit, form or other memoranda, and thereafter no fire insurance corporation shall attach to any such standard policy of insurance, any rider, * * * covering substantially the same agreement provided for by such standard rider * * * except it be in the precise language of the form so filed by the Superintendent of Insurance." Here there is no limitation of the power of the insurance companies to make such agreements as they see fit except that such agreement may not nullify the provisions of the standard policy or vary the form of a standard rider which may be approved by the Superintendent of Insurance.

We are told that a standard rider embodying the standard mortgagee clause has been approved by the Superintendent of Insurance and filed in his office, though no such rider is set forth in the affidavits. Assuming that we may take judicial notice of the form of riders which have been approved by the Superintendent of Insurance and filed in his office, it would appear that the Superintendent of Insurance has approved riders embodying the standard mortgagee clause, but such riders are headed with the words " New York Standard Mortgage Clause for Use in Connection with First Mortgage Interest on Real Estate," and in this case the mortgage of the plaintiff Fischer is a second mortgage.

Possible distinction under the circumstances between first and second mortgages was not called to the attention of the courts below, and at least for the present we may disregard such distinction. Even so, there is nothing in the statute which would make it obligatory upon a fire insurance company to use the standard form of mortgagee

clause in every case where loss is payable to a mortgagee as interest may appear. Insurance companies are forbidden by the statute to attach any rider covering *substantially the same agreement* provided for by the standard mortgagee rider filed in the office of the Superintendent of Insurance, but by no construction of the language of the statute is an insurance company required to incorporate into the policy the agreement provided for by such standard rider where the insurance company does not desire to enter into " substantially the same agreement." The conditions contained in the standard form of fire insurance policy are applicable alike to mortgagee and mortgagor, except as other provisions relating to the interest and obligations of such mortgagee are added by agreement in writing. The only agreement in writing which has been added is the agreement that loss should be payable to the mortgagee as interest may appear. The parties are free to determine whether other agreement should be made. They have not done so in this case, and, therefore, the standard mortgagee rider cannot be read by implication into the policy.

The contention of the mortgagee that as to the Home Insurance Company there has already been a conclusive adjudication that the allegations contained in the affirmative defenses are untrue, is without substance. The earlier action was based upon a different policy, and no such defense was interposed in that action. (See *Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304.) In view of these conclusions, it is unnecessary to consider whether in any event an action brought by mortgagee and mortgagor together may be severed and separate judgment awarded.

The judgment of the Appellate Division should be reversed and the order of the Special Term affirmed, with costs in this court and in the Appellate Division.

POUND, Ch. J., CRANE, KELLOGG, O'BRIEN and CROUCH, JJ., concur; HUBBS, J., not sitting.

Judgment accordingly.