Harry B. Frank, J.
This action for a recovery on certain fire insurance policies was submitted to the court upon an agreed statement of facts and the admissions contained in the pleadings.
The policies in suit were issued as a combined “ Lloyd’s Fire Policy ” by various underwriters at Lloyd’s of London insuring certain premises located in the State of Ohio against loss by fire in the total sum of $100,000. The policies, which bear combined policy number 30255, will hereinafter for sake of convenience be referred to singularly as the Lloyds policy. The named assured in the policy is the owner of the premises, *824 Kamen Soap Products Co., Inc., who is not a party to this action. The plaintiff herein is the assignee of the rights of Reconstruction Finance Corporation, the mortgagee of the property to whom loss, if any, under the policy is made payable. The defendant, Holford, is one of the underwriters at Lloyd’s who subscribed to the policy, and by stipulation of the parties final determination of the issue of liability against Holford is to be binding upon all of the subscribing underwriters.
The Lloyds insurance was procured through Hall & Henshaw of New York who are surplus line insurance brokers. While dated August 5, 1952, the policy is written effective as of June 14,1952 for a three-year period expiring June 14, 1955. Appearing on the face of the policy, imprinted in red type in distinction to the larger black print used elsewhere therein, are the following provisions:
“ Warranted same terms and conditions as and to follow the settlements of Liverpool & London & globe insurance company, and that said Company has, at the time of any Loss, and at the same gross rate, at least piety thousand dollars (subject only to reduction by amount of any Loss not reinstated) on the identical subject matter and risk, and in identically the same proportion on each separate part thereof.
“ This Policy is subject without notice to the same conditions, endorsements, assignments, and alterations of rates as are, or may be, assumed in the above-mentioned Company’s Insurance upon which this Policy is based and shall be deemed to include such risks of Lightning and/or Explosion as are included in that Insurance.
1 ‘ If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise, this Policy shall become void, and all claim thereunder shall be forfeited.”
Prior to delivery of the policy itself, a memorandum of insurance, dated July 17,1952, was sent to Kamen by Hall & Henshaw advising that ‘ ‘ insurance is held binding for your account by Underwriters in London, England.” In addition to particulars as to the type, amount and duration of coverage, cost of premium, and the like, the memorandum included the statement “ subject to the pollowing warranty clause: ” followed by a verbatim recital of the first two paragraphs of the policy provisions above set forth, which will hereinafter be denominated as the “warranty clause.” While the provision regarding fraudulent claims did not appear therein, the memorandum further contained certain terms regarding currency and mode of payment, and it concluded with the following: “note: Any *825 reduction in the amount of the warranted insurance (except by loss) or its termination from any cause, automatically terminates this insurance, unless immediate notice is given and the warranty amended.” The references to currency and payment are substantially incorporated in the policy which was subsequently delivered and upon which this suit is brought, but the language of the ‘1 xote ’ ’ nowhere appears therein.
The original Liverpool & London & Globe Insurance Company policy which is referred to in the “warranty clause ” carried the expiration date of July 26, 1952, at which time a renewal was issued for the three-year period from July 26, 1952 to July 26,1955.
At the end of 1952, both the Lloyds policy and the Liverpool renewal policy were cancelled by the respective insurers for nonpayment of premium. While the Lloyds policy was can-celled on November 28, 1952, the parties agree that no notice of said cancellation was ever sent by, or on behalf of, the insurer to either the assured or to the mortgagee, Reconstruction Finance Corporation. The Liverpool renewal policy was can-celled as of December 8, 1952, and it is conceded that on July 24,1954, when a fire occurred at the Ohio property, no Liverpool policy, in any amount, was in effect on said premises.
The only question presently to be determined is whether or not plaintiff is entitled to recover on the Lloyds policy, the amount of any such recovery, if warranted, being reserved for a separate trial.
The parties have stipulated that the policy is to be construed and enforced in accordance with the law of New York to the same extent as if such were the place where the contract of insurance was made and was to be performed.
The focal point of the instant controversy is the so-called ‘ ‘ warranty clause ’ ’, and the crucial issue is the meaning and effect of the provisions of such clause with particular reference to the rights of the mortgagee. While defendant submits that the policy sued upon was in fact cancelled prior to the time of loss, the primary basis upon which it resists liability is that of noncompliance with the terms of the ‘1 warranty clause ’ ’, it being conceded that no Liverpool policy was in effect at the time of loss. Defendant contends that the existence of the specified Liverpool insurance at that time, and settlements thereunder which could be followed, are conditions precedent to any liability under the Lloyds policy whether to the mortgagee or to the assured.
While warranty provisions similar to those here present have been used by Lloyds underwriters for many years, Ameri *826 can precedents dealing with such clauses are few in number. Counsel, despite diligent efforts, have been unable to submit any case specifically relevant to the instant fact pattern, nor has the court’s independent research uncovered any case precisely in point, although some helpful decisions dealing with particular aspects of the problem have come to light.
The English courts have followed the view which was first enunciated in the case of Barnard v. Faber (1 Q. B. 340 [1893]) wherein it was held that a similar “warranty clause” made it a condition of the insurance that the other named company, or companies, undertook the same risk at the “ same rate and identical interest ’ ’, and that if such promise was not strictly fulfilled there could be no recovery by the assured. In construing the meaning of the clause, the various Judges evidenced some discomfort with the terminology employed and the observation was made that it could not be said that “ the words of this clause of warranty are happily chosen.” In the Barnard case the other insurance was not written at the same rate and identical interest and the court particularized that part of the clause which required identity of rate and interest as a condition precedent ‘ ‘ without which the contract would not be binding ’ ’, while it denominated the remainder of the clause as a condition subsequent. Later English decisions, however, appear to have de-emphasized this distinction and the various obligations imposed by the clause have been characterized generally as conditions precedent to liability or to a recovery by the assured (see Beauchamp v. Faber, 14 T. L. R. 544; Bancroft v. Heath, 17 T. L. R. 425; Sulphite Pulp Co. v. Faber, 11 T. L. R. 547; cf. Verischeru/ngs Und Transport Aktiengesellschaft Daugava v. Henderson, 151 L. T. R. 392).
The English decisions have served as the basis for expressions in some American cases to the effect that any departure from strict compliance with the obligations of the ‘ ‘ warranty clause ” renders the policy ipso facto void, or unenforcible, although the construction of the clause in these cases has not been directly in the context of a suit seeking recovery on the policy containing such warranty. (See Federal Intermediate Credit Bank v. Globe & Rutgers Fire Ins. Co., 7 F. Supp. 56 [D. C. Md.]; Progress Laundry Co. v. Schweik, 332 I11. App. 408; Reed Mfg. Co. v. Wurts, 187 I11. App. 378.)
Contrary viewpoints, however, have also been expressed and it has been held that cessation of the other insurance, or some variance in its terms at the time of loss, do not necessarily avoid the insurer’s liability, and recovery has been permitted despite such circumstances. (See International Salt Co. v. *827 Tennant, 144 111. App. 30; Pugh v. Commonwealth Mut. Fire Ins. Co. of Pa., 195 F. 2d 83; cf. Hirsch v. Fidelitas Societe Anonyme, 50 Misc. 582.) The International Salt Co. ease is of particular interest since it specifically deals with the effect of the cancellation of the other insurance prior to the time of loss. However, the terms of the policy and the language of the warranty clause in that case are not in all respects identical to the instant policy.
The only authority in this jurisdiction which has been submitted by counsel is the case of Scharles v. N. Hubbard Jr. Co. (74 Misc. 72). Unfortunately, that decision by a divided Appellate Term bench with a vigorous dissent, affords minimal assistance. The warranty clause there involved was construed within the framework of an action in negligence brought against the assured’s broker and the facts indicate that the other insurance was carried at a higher rate and on different proportions from the outset of the policy, thereby rendering the warranty false at its inception. Moreover, that warranty clause was expressed in language significantly different and more specific than is here present, and it clearly stated that: 1 ‘ This policy is issued upon the understanding and warranty by the assured that the * * * 'Company * * * has now a policy or policies in force * * * at no higher rate of premium, and that said policy or policies as now written will be continued in force during the entire currency of this policy; otherwise, this policy is void,”
In addition to the Sobarles case, the court has also taken note of Badger v. Hamilton Fire Ins. Co. (65 Misc. 596 [1909], affd. 136 App. Div. 893). In that case, the policy contained a peculiar provision which had the effect of incorporating by reference a provision similar to the instant “ warranty clause.” There, as in the Sobarles case, the rate of the other company was in fact higher than that of the policy sued upon, which was specifically prohibited by the warranty. In construing the clause, the court referred to the English authorities and its conclusion denying recovery to the assured was essentially in accord with those authorities and consonant with the then prevailing stringent construction accorded warranties, it being noted that “ a warranty is inexorable.”
Aside from the fact that both of the foregoing cases were decided more than 50 years ago within the context of the Insurance Law as then constituted, neither case involved the rights of a mortgagee and each of them dealt with the effect of a specifically prohibited variance in rates. In the case at bar, there is no question of any such variance and the facts herein *828 clearly establish that at the time that the Lloyds policy went into effect, and for a period thereafter, there was full and complete compliance with the “ warranty clause ” in every respect. The only question is the effect of the subsequent cancellation of the other insurance after the Lloyds policy had gone into effect but prior to the time of loss, with particular reference to the rights of the mortgagee.
In order to construe the policy herein, it is essential at the outset to ascertain the terms and conditions which are embodied in the contract of insurance upon which this suit is brought. The policy on its face is a brief document which identifies the parties to the contract and sets forth the fundamentals as to the amount of the premium, the period of insurance and the nature and amount of coverage. In addition to the warranty clause, there are certain other terms which relate in the main to the proportionate share of the loss assumed by each underwriter and to the time in which payment is to be made after loss is proved, but on the whole the instrument does not contain the numerous terms and conditions normally found in a policy of this type, particularly such as are found in the “ standard fire insurance policy ” in general use under the mandate of section 168 of the Insurance Law, which governs the terms and conditions which are ordinarily to be included in a policy of fire insurance issued in this State. Such section, however, has no application where the insurance covers real property which, as in the instant case, is located outside the State, even though the contract of insurance was made within the State (see Loomis v. Lewis, 62 App. Div. 433; Brown v. Escber, 140 Misc. 292.)
Although the section as to standard forms is inapplicable, the basic terms and conditions to be found therein are in fact a part of the Lloyds contract of insurance in suit. Such occurs by reason of the specific references in the Lloyds policy to the terms and conditions, including indorsements, of the Liverpool policy which was in the standard form. These references in the ‘ ‘ warranty clause” have been judicially determined to have the same effect as though the entire Liverpool policy was incorporated in the Lloyds policy, and by such incorporation all the terms of the former became a part of the latter. (Bank of Rockville Centre Trust Co. v. Baldwin, 238 App. Div. 354.) Among the terms thus incorporated and made a part of the Lloyd’s policy are specific provisions covering cancellation and a standard mortgage clause indorsement naming plaintiff’s assignor to whom loss is also specifically made payable in the *829 Lloyds policy. (Bank of Rockville Centre Trust Co. v. Baldwin, supra.)
The provisions as to cancellation are particularly pertinent in light of the contention that the policy was cancelled by defendant prior to the time of loss. The cancellation clauses provide that the policy may be cancelled by the company £ 1 by giving to the insured a five days’ written notice of cancellation,” and as to the mortgagee’s interest “by giving to such mortgagee a ten days’ written notice of cancellation.” A strict fulfillment of the requirements of the cancellation clause, in accordance with the terms of the policy, must be observed by the party seeking to terminate the contract prematurely. (See 3 Richards, Insurance, p. 1761, § 531 , Matter of Otterbein v. Babor & Comeau Co., 272 N. Y. 149.) Since it is conceded herein that no notice was ever given by, or on behalf of, the defendant to either the insured or the mortgagee, as required by the terms of the policy, no effective cancellation took place. (See Hermann v. Niagara Fire Ins. Co., 100 N. Y. 411; 6 Appleman, Insurance Law and Practice, p. 711, § 4182; Healy v. Insurance Co. of State of Pa., 50 App. Div. 327; cf. Kamille v. Home Fire & Mar. Ins. Co., 129 Misc. 536; B & B Trucking, Inc. v. Home Fire & Mar. Ins. Co., 125 Misc. 312, affd. 216 App. Div. 710, affd. 243 N. Y. 558.)
Since the Lloyds policy herein was never effectively cancelled the determinative issue is the effect of the cancellation of the Liverpool insurance upon the rights of the mortgagee. The policy itself contains no provision specifically dealing with the contingency of termination or cancellation, as such, of the other insurance during its currency. A definite obligation was, of course, imposed at the outset that the policy be “ warranted same terms and conditions as” the then existing Liverpool policy, and there is no question that there was full compliance with such condition at the time that the instant policy went into effect with a resulting incorporation therein of all of the terms and indorsements of the Liverpool policy, including the standard mortgage clause. There is, however, nothing whatsoever in the Lloyds policy which in any way makes such terms subject to, or affected by, the subsequent cancellation or termination of the other insurance. While the policy is made subject ‘£ to the same conditions, endorsements, assignments, and alterations of rates as are, or may be assumed ” (italics supplied) in the Liverpool policy, such provision is limited to the matters specifically set forth therein and cancellation or termination of the Liverpool policy is not among the matters covered. The *830 contract of insurance can be interpreted and construed only in accordance with the intent of the parties as evidenced by the terms expressed. The court is bound by the plain terms of the policy and cannot under the guise of construction or interpretation supply terms beyond those expressed in the contract of insurance as written. (Sperling v. Great Amer. Ind. Co., 7 N Y 2d 442; Kelley v. Indemnity Ins. Co. of North America, 252 App. Div. 58, affd. 276 N. Y. 606.) If it was intended that the mere termination of the Liverpool insurance was to automatically affect either the existence of the Lloyds policy, or any of its terms, it was incumbent upon the insurer to provide for such drastic limitation by clear and specific language. (Whiteside v. Insurance Co. of State of Pa., 274 App. Div. 36; Greaves v. Public Serv. Mut. Ins. Co., 5 N Y 2d 120.) The policy herein contains no such provision and on its face evidences a contrary intent. This policy was written for a full three-year term at a time when th original Liverpool policy was scheduled to expire a few months hence. While certain requirements as to the Liverpool policy were imposed with regard to the “ time of loss ” such cannot be held, in the absence of any contrary expressed intent, to affect the continuance of the Lloyds policy, or any of its terms, prior thereto. At the time of loss, therefore, the Lloyds policy, and all of the terms, conditions and indorsements, including the standard mortgage clause, incorporated therein from the Liverpool policy, were in effect. (Sulphite Pulp Co. v, Faber, 11 T. L. B. 547, supra; Hoffman v. Central Sur. £ Ins. Corp., 297 111. App. 371.) Such is, in effect, conceded by defendant in its answer, wherein it relies upon the prorata liability provision “incorporated by reference” as its third affirmative partial defense.
The terms of the policy provide that it is “ to follow the settlements of ‘ the Liverpool company and ’ that said Company has, at the time of any Loss * * * at least fifty thousand dollars * * * on the identical subject matter and. risk ’ ’. Such provisions relating to the existence of particular facts at a future time may be construed to constitute a promissory warranty which would be a condition precedent to a recovery under the policy. (See Grady v. Concordia Fire Ins. Co., 267 N. Y. 177; Pugh v. Commonwealth Mut., Fire Ins. Co. of Pa., 195 F. 2d 83, supra; Henjes v. Ætna Ins. Co., 132 F. 2d 715, cert. den. 319 IT. S. 760.) Whether the breach of such warranty would prevent recovery by the assured is not here material to the rights of the mortgagee under the standard mortgage clause which is part of the policy sued upon.
*831 It is well settled that the standard mortgage clause creates an independent insurance of the mortgagee’s interest just as if he had received a separate policy from the company but without any inconsistent or repugnant conditions imposed upon the owner and free from invalidation by the latter’s act or neglect. The effect of such clause is that the mortgagee takes the same benefit from his insurance as if he had received a separate policy from the company, free from the conditions imposed upon the owner of the property. The stipulation that the mortgagee’s insurance shall not be “ invalidated” by any act or neglect of the owner is construed in accordance with the plain and obvious meaning of the language to mean that the insurance of the mortgagee should not be affected or in any wise impaired or lessened by any act or neglect of the owner; and no breach of condition or warranty on the part of the insured mortgagor, whether it occurs before or after the issuance of the insurance policies, will be allowed to invalidate the separate contract between the insurer and the mortgagee. (Eddy v. L. A. Corp., 143 N. Y. 311; Savarese v. Ohio Farmers Ins. Co., 260 N. Y. 45; Goldstein v. National Liberty Ins. Co., 256 N. Y, 26; Heilbrunn v. German Alliance Ins. Co., 140 App. Div. 557, affd. 202 N. Y. 610; Syracuse Sav. Bank v. Yorkshire Ins. Co., 301 N. Y. 403; BX Corporation v. Ætna Ins. Co., 187 Misc. 806, affd. 272 App. Div. 880.)
Since the mortgagee’s interest under the policy sued upon was covered by a standard mortgage clause, its rights are governed thereby. There is nothing contained in the policy herein which imposes any obligations upon the mortgagee beyond those found in the standard clause itself, and no breach by the mortgagee with respect to any such obligation in the clause is claimed. Insofar as the insured has failed to comply with the conditions of .the policy, such acts or neglect on its part may not, under the foregoing authorities, be imputed to the mortgagee nor permitted to impair the insurance of the mortgagee’s independent interest, and the mortgagee is entitled to recover herein. Such is the contract which the defendant insurer made and it is bound thereby.
Accordingly, the court finds that plaintiff, as assignee of the mortgagee’s rights, is entitled to recover under the policy herein. Pursuant to the stipulation of the parties, all issues as to the amount of such recovery are reserved for a trial to be held before this court on a date to be agreed upon by counsel, subject to the approval of the court.