**IONIAN SHIPPING COMPANY, Plaintiff,**

and

**Allied Chemical Corporation, Intervenor-Appellant,**

v.

**BRITISH LAW INSURANCE CO., Ltd., et al., Defendants-Appellees.**

**No. 655, Docket 34327.**

United States Court of Appeals, Second Circuit.

Argued March 30, 1970.

Decided May 8, 1970.

---

John H. Cleveland, III, New York City (Tallman Bissel, John de P. Douw, Haight, Gardner, Poor & Havens, New York City, on the brief), for intervenor-appellant Allied Chemical Corp.

William G. Symmers, New York City (Richard H. Webber, Symmers, Fish & Warner, New York City, on the brief), for defendants-appellees British Law Insurance Co., Ltd., and others.

Before KAUFMAN and FEINBERG, Circuit Judges, and TIMBERS, District Judge.*

IRVING R. KAUFMAN, Circuit Judge:

Allied Chemical Corporation sought intervention as of right under Fed.R. Civ.P. 24(a) in Ionian Shipping Company's suit against British Law Insurance Co., Ltd., insurer of its vessel Sofia M. This appeal questions both the correctness and appealability of Judge Edelstein's order denying that petition for intervention.

In April 1968 Ionian Shipping, owner of the Sofia M, gave the Chase Manhattan Bank (National Association) a First Preferred Ship Mortgage. In order to protect its interest, Chase required Ionian to obtain and keep in force marine hull insurance. In May 1968, pursuant to that requirement, Ionian obtained a $500,000 policy from the defendant insurers for one year. The policy, in pertinent part, contained a "loss payable" clause requiring distribution of payments to Chase and Ionian "as their respective interest may appear."[1] It further required the insurer to give Chase

---

* Chief Judge of the District of Connecticut, sitting by designation.

1. "Loss, if any, payable to the Chase Manhatten [sic] Bank (National Association) as First Preferred Mortgagee for distribution by it to itself and Ioanian [sic] Shipping Company, Owners, as their respective interest may appear, with the exception of losses not in excess of U. S. $50,000 each loss or occurrence, which may be paid direct to Ioanian [sic] Shipping Company, or their order."

ten days "notice of cancellation" of the policy.[2] The policy also contained standard "New York suable" and "service of suit" clauses, permitting suit in New York, under the law applicable as if the policy were delivered in New York.[3]

On July 24, 1968, the Sofia M ran aground at Punta Gallinos, Columbia, and allegedly became a total loss. British Law Insurance, claiming that the grounding was intentional, refused to pay the insurance proceeds. In April 1969 Ionian sued on the insurance contract; a week later Chase assigned the mortgage to Allied (which had previously guaranteed Ionian's obligation under the mortgage). Allied now stands in Chase's place as mortgagee, and seeks to intervene of right in Ionian's suit against British Law Insurance in order to protect its rights under the insurance contract as a mortgagee.

## I. *Appealability*

■ Before reaching the merits of the motion for intervention, however, we must deal with the perplexing issue of appealability. We have jurisdiction only to review "final" orders, 28 U.S.C. § 1291 (1964), except in the limited circumstances set out in 28 U.S.C. § 1292 (1964). It is settled that the grant of a motion to intervene is not appealable. Otten v. Baltimore & O. R. Co., et al., 205 F.2d 58 (2d Cir. 1953) (L. Hand, J.) ("Since the second order [granting intervention] is clearly unappealable we shall disregard it."). An order denying intervention, on the other hand, presents significantly more difficult problems. Supreme Court cases have established that if "appellant may intervene as of

right, the order of the court denying intervention is appealable." Sam Fox Publishing Co. v. United States, 366 U. S. 683, 688, 81 S.Ct. 1309, 6 L.Ed.2d 604 (1961); Sutphen Estates, Inc. v. United States, 342 U.S. 19, 20, 72 S.Ct. 14, 96 L.Ed. 19 (1951).

*Sam Fox Publishing* speaks of the party "entitled" to intervene of right; it does not deal with the case where the party seeking intervention as of right, is not, in fact "entitled" to it. In Levin v. Ruby Trading Corp., 333 F.2d 592 (2d Cir. 1964), we assumed that we did not have jurisdiction to hear such an appeal and that in effect appealability turned on the merits of the claim for intervention. The distinction "is not a very effective or useful limitation of appellate jurisdiction," since its only consequence is that if the application for intervention is not found meritorious, the reviewing court must dismiss the appeal rather than affirm the judgment below. See Levin v. Ruby Trading Corp., 333 F.2d 592, 594 (2d Cir. 1964). In a later case, however, we simply "assumed" that we had jurisdiction to hear a similar appeal,[4] and after considering the merits, *affirmed* a denial below of a motion for intervention as of right instead of dismissing it. Fox v. Glickman Corp., 355 F.2d 161, 163 n. 2, 165 (2d Cir. 1965), cert. denied, sub nom. Levy v. Glickman Corp., 384 U.S. 960, 86 S.Ct. 1585, 16 L.Ed.2d 672 (1966). See also Farmland Irrigation Co. v. Dopplmaier, 220 F.2d 247, 248 (9th Cir. 1955) (denial of intervention appealable where sought as of right). But see Lipsett v. United States, 359 F.2d 956 (2d Cir. 1966) (appeal from denial of permissive intervention dismissed where no abuse

---

2. "Ten days notice of cancellation to be forwarded to the Chase Manhatten [sic] Bank (National Association), 25 Broadway, New York City, and Ioanian [sic] Shipping Company c/o John P. Tilden Ltd., 100 William Street, New York City."

3. Both the "New York suable" and "Service of Suit" clauses are standarized, and regularly inserted in marine insurance contracts issued in New York.

4. *Fox* also involved an appeal from a denial of a motion for permissive intervention. Apparently resolving contrary prior doubts as to the appealability of such an order, we reviewed the trial judge's decision and affirmed on the basis that there had been no abuse of discretion. Fox v. Glickman Corp., 355 F.2d 161 (2d Cir. 1965).

of discretion); Brotherhood of Railroad Trainmen v. Baltimore & Ohio R.R. Co., 331 U.S. 519, 524, 67 S.Ct. 1387, 91 L. Ed. 1646 (1947). ("Ordinarily, in the absence of an abuse of discretion, no appeal lies from an order denying leave to intervene where intervention is a permissive matter within the discretion of the court.")

Commentators seem to agree that requiring appealability of an order to turn on the merits serves no useful purpose. They would prefer to consider all denials of intervention final orders and therefore appealable, but would reverse only when a party is entitled to intervention as of right or the trial court abused its discretion in denying permissive intervention. See Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv.L.Rev. 720, 740–51 (1968); 3B J. W. Moore, Federal Practice ¶24.15 at 24–565 (1969).

This pragmatic formulation, which would permit the reviewing court to dispose of the merits without indulging in a pointless discussion of appealability in each instance, meets two objections. The Supreme Court, prior to the 1966 amendments to Rule 24(a), consistently indicated that the proper course was to dismiss when the appellate court was of the view that the order denying intervention (whether mandatory or permissive) was correct. See, e.g., Brotherhood of Railroad Trainmen v. Baltimore & Ohio R.R. Co., 331 U.S. 519, 524, 67 S.Ct. 1387 (1947).

■ We recognize that, to follow this approach in each instance, will require the court to examine the merits of the motion for intervention before it can consider whether it has jurisdiction. See C. Wright, Handbook of the Law of Federal Courts 332 (2d ed. 1970). Given the aim of the 1966 amendments to the Federal Rules which substituted "a practical rather than a conceptual emphasis in questions of intervention," id., at 328, the proper and sensible course is to assume that an order denying intervention is final for the purposes of appeal, and to go directly to the merits.

See Fox v. Glickman Corp., 355 F.2d 161, 163 n. 2, 165 (2d Cir. 1965), cert. denied, sub nom. Levy v. Glickman Corp., 384 U.S. 960, 86 S.Ct. 1585 (1966). Hence we assume that we have jurisdiction to hear Allied's appeal from the order denying its motion for intervention.

## II. *Intervention*

■ Allied moved in the district court only for intervention as of right. The motion was denied without opinion. To satisfy Rule 24(a) (2), governing intervention of right, Allied must show (1) that it claims an interest in the insurance proceeds; (2) that, as a practical matter, that may be impaired by this suit; and (3) that Ionian will not provide adequate representation.

British Law Insurance, stating that Allied's rights are "derivative and depend on whether Ionian can recover," seems to concede that the first two criteria are satisfied. Both it and Allied agree that the only issue is whether Ionian will provide Allied with adequate representation in the suit for the insurance proceeds. On the merits of that question, however, they differ. The nub of Allied's claim for intervention is that it has, or may have, interests superior to those of Ionian, interests which Ionian would be utterly disinterested in protecting, or even raising.

In defending itself against Ionian's demand for the insurance proceeds, British Law Insurance Co., Ltd., raised as a defense the claim that the grounding of the Sofia M was intentional, done with the connivance of Ionian, and thus not covered by the insurance contract. See Steam Tanker Padre Island, Inc., et al. v. London Assurance, Guildhall Insurance Company, et al., Civ. No. 66–c–94 (S.D.Tex., Dec. 16, 1969). See also P. Samuel & Co., Ltd. v. Dumas, [1924] A. C. 431. Allied's response, and the basis for its motion for intervention of right, is that even should British Law Insurance prove intentional grounding, the innocent mortgagee should not be barred from recovering. It reads the "notice of

cancellation" and "loss payable" clauses, see notes 1 and 2, *supra*, as together imposing a "standard" mortgagee clause on the insurance contract, providing in effect that the mortgagee will not be harmed by the acts or defaults of the mortgagor. See 11 G. J. Couch, Insurance §§ 42:684, 42:685 (2d ed. 1963). See also Prudential Ins. Co. v. German Mut. Fire Ins. Assn., 228 Mo.App. 139, 60 S.W.2d 1008 (Kansas City Ct. of App. 1933).

The point is hardly free from doubt. Looking to the law of New York (Ionian's principal place of business) in the absence of an applicable federal maritime rule, Wilburn Boat Co. v. Firemen's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), we find that a mortgagee may add a written "standard" clause stating that the mortgagee's interest shall not be "invalidated" by any act or neglect of the owner. See N. Y. Insurance Law McKinney's Consol. Laws, c. 28, § 168(6) (McKinney 1966); National Factors, Inc. v. Waters, 42 Misc.2d 822, 249 N.Y.S.2d 121, 129 (1964). Absent that clause, a "loss payable" provision naming the mortgagee does not appear to create a standard clause protecting the mortgagee from the acts of the mortgagor. See Hessian Hills Country Club v. Home Ins. Co., 262 N.Y. 189, 186 N.E. 439 (1933). The New York rule, by its terms applicable only to fire insurance contracts, may, with Couch, *Insurance*, give some indication of the background against which the British Law Insurance contract was drafted. Cf. National Factors, Inc. v. Waters, 42 Misc.2d 822, 249 N.Y.S.2d

121 (1964) (construing insurance on Ohio real property with the assistance of New York law).[5]

We need not resolve this issue, however, for despite the vigorous efforts of the parties to make it so, the presence or absence of a standard clause does not determine the outcome of this appeal. Allied is very much in the position of the proverbial disappointed author: much of what he wrote was interesting, and much original; but what was interesting was not original, and what was original was not interesting. Insofar as Allied's interest may be impaired by this suit it will be adequately represented; and with respect to the issue on which it will not be represented, it will not be prejudiced.

■ Assuming *arguendo* that Allied is the beneficiary of a standard clause, and thus has rights superior to Ionian even if the ship were grounded intentionally, we fail to see how the outcome of this litigation could, "as a practical matter impair or impede his ability to protect that interest." Fed.R.Civ.P. 24(a) (2). If Allied is not a party to the suit, then the question of its superior rights cannot arise, for they are irrelevant to Ionian's claim. And if Allied is not a party, and the issue does not arise, and thus is not appropriately litigated, it is hornbook law that Allied's right to assert it in a subsequent suit will not be barred by either collateral estoppel or *res judicata*. See Lawlor v. National Screen Service Corp., 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955); 1B J. W. Moore, Federal Practice ¶ 0.-405[1] at 621 (1965).[6] It may be that

5. See also Steam Tanker Padre Island, Inc., et al. v. London Assurance, Guildhall Insurance Company et al., Civ.No. 66–c–94 (S.D.Tex., Dec. 16, 1969); P. Samuel & Co., Ltd. v. Dumas, [1924] A.C. 431 (recovery denied to a separately insured mortgagee because casting away of a ship did not constitute an insured "peril of the sea" covered by the contract); Hearings Before the Subcommitte on Antitrust and Monopoly of the Senate Committee on the Judiciary, 88th Cong., 1st Sess. 6645–48 (1963) (suggest-

ing that standard clauses are not ordinarily written into marine hull insurance contracts).

6. If the mortgagee is protected by a standard clause, then the New York cases suggest that he has an "independent contract" with the insurer, made when the insurer assents to the clause. See Hessian Hills Country Club v. Home Ins. Co., 262 N.Y. 189, 196, 186 N.E. 439, 441 (1933); Goldstein v. National Liberty Ins. Co., 256 N.Y. 26, 175 N.E. 359 (1931) (Pound, J.). See also 1 L. A.

Ionian will not represent Allied adequately on this issue, but its failure to do so will not rise to the level of impairment sufficient to make intervention of right appropriate. See Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv.L. Rev. 721, 733–34 (1968).[7] Moreover, there is little likelihood that novel issues of law will be determined that will have the effect of *stare decisis*, an element which at least one court has found sufficient to require intervention of right. See Atlantis Development Corp. v. United States, 379 F.2d 818 (5th Cir. 1967). As we have stated, the 1966 amendments to Rule 24 were intended to focus on "practical" considerations, see Fed.R.Civ. P. 24, Advisory Comm. Note, 39 F.R.D. 110, 111 (1966); we are directed to none that would indicate any impairment of Allied's opportunity to present its claim in a subsequent suit.

■ If we assume, on the other hand, that Allied has no rights greater than Ionian, and if we assume further that Allied would be barred from recovering (and its interests thus "impaired") should Ionian lose this suit, Allied still may not intervene of right, for Ionian will represent it adequately. Their interest in recovering under the policy will be identical; Ionian, if anything, will have an even more powerful incentive, for it stands to lose the entire value of the policy—$500,000—while Allied's mortgage is worth only something over

half that sum. Thus we conclude that whether or not Allied stands protected by a "standard" mortgagee clause, it is not entitled to intervene of right.[8]

It is somewhat perplexing that Allied did not seek permissive intervention under Rule 24(b) (2). It shares with Ionian a strong interest in common "question[s] of law and fact," Fed.R.Civ.P. 24(b) (2), and by disposing of the additional standard clause defense in this action it would follow the stricture of Rule 1 that all the Federal Rules "shall be construed to secure the just, speedy and inexpensive determination of every lawsuit." Even more relevant, perhaps, it would comport with the "coordinated" amendments to Rules 19, 23 and 24 in 1966, which sought to provide a pragmatic adjustment between minimizing meddling in private lawsuits and satisfying "the great public interest, especially in these explosive days of ever-increasing dockets, of having a disposition at a single time of as much of the controversy to as many of the parties as is fairly possible consistent with due process." Atlantis Development Corp. v. United States, 379 F.2d 818, 824 (5th Cir. 1967). The burden on this lawsuit caused by adding the determination of Allied's single additional issue is hardly likely to bulk large when compared to the cost and inconvenience of an entirely separate suit. In amending Rule 24(a), the Advisory Committee specifically suggested that the intervenor might be sub-

---

Jones, Mortgages of Real Property § 500 (1928). As the obligee under an "independent" contract, the mortgagee's rights would be unaffected by the mortgagor's suit, unless he was a party to it. See Restatement, Judgments § 102, comment a (1942) (no binding effect of judgment when the promise is several—that is, when the interests of the obligees are distinct).

7. Allied's claim fits neatly within Professor Shapiro's category of "Claim or Defense Related to the Subject Matter of the Action," which he suggests "appears to be an elaborate statement of the *permissive* intervention provision of rule 24(b) (2) * * *." 81 Harv.L.Rev. at 733 (emphasis added).

8. Allied also urges two other grounds for inadequate representation—that it, and not Ionian has a first right to the proceeds of the insurance contract, and that it and Ionian are at odds in other litigation. Both seem largely makeweight. As to the first, British Law Insurance has indicated that it will pay the proceeds to the mortgagee in accordance with the contract terms. On the second, since Allied's interest and that of Ionian coincide in all respects in this litigation, there is no reason to believe that an unrelated dispute would make Ionian less anxious to protect its substantial stake (and therefore Allied's), in the outcome of this suit.

**192**

jected to conditions necessary to "efficient conduct of the proceedings"; we can see no reason why similar conditions applied to a discretionary intervenor would not cure any possible objection to intervention in this action. See 39 F.R. D. 111. Moreover, as we see it, it is still not too late for Allied to make such an application to the district court.

The denial of intervention of right is affirmed.