**In re J.C. WYCKOFF & ASSOCIATES, INC., a Michigan corporation, Debtor.**

**J.C. WYCKOFF & ASSOCIATES, INC., a Michigan corporation, Plaintiff,**

**v.**

**AETNA CASUALTY & SURETY COMPANY, Defendant.**

**Bankruptcy No. 83–00579. Adv. No. 83–0337.**

United States Bankruptcy Court, E.D. Michigan, N.D.

Aug. 24, 1984.

Susan M. Cook, Bay City, Mich., for Second National Bank.

Charles R. Tuffley, Southfield, Mich., for Aetna.

Larry Preston, Timothy McLeod, Polasky, Miesel, Rosenbaum & McLeod, Roland Jersevic, Saginaw, Mich., for debtor/plaintiff, Wyckoff.

## MEMORANDUM OPINION

ARTHUR J. SPECTOR, Bankruptcy Judge.

In this case the Plaintiff Debtor-in-Possession is suing its insurer for proceeds of its fire insurance policy after the Plaintiff's building was destroyed by fire. The Defendant asserts an arson defense. This is a motion by Second National Bank of Saginaw (the Bank) to intervene under F.R.C.P. 24(a)(2) and 24(b). The Bank holds a first mortgage on the destroyed property. Defendant resists the motion, arguing that since the Bank was listed only as a "loss payee" and not as a "mortgagee" in the policy, it holds no rights greater than the named insured, to-wit: the Plaintiff. Therefore, according to the Defendant, there is no necessity for the Bank to participate in this action as its rights are coincidental with and well protected by the Plaintiff. The Bank responds by claiming that its rights are greater than those of its mortgagor for the following reasons:

(1) It *was* endorsed as a mortgagee on the policy;

(2) If it was not so endorsed, it was due to the negligence of the defendant's agent;

(3) Even as a loss payee, under recent Michigan case law, which holds that a co-insured that is not *in pari delicto* with the arsonist may collect the proceeds of the insurance policy notwithstanding the other co-insured's involvement, it is entitled to collect notwithstanding its mortgagor's malfeasance.[1]

---

1. The Bank and the Defendant vigorously argued the merits of their cases in support of their positions on this motion. However, a motion for intervention is rarely the proper vehicle for deciding the merits of a putative lawsuit. As explained in *Atlantis Development Corp. v. United States,* 379 F.2d 818, 827 (5th Cir.1967):

"... it is, of course, conceivable that there will be some instances in which the total lack of merit is so evident from the face of the moving papers that denial of the right of intervention rests upon a complete lack of a substantial claim. But it hardly comports with good administration, if not due process, to determine the merits of a claim asserted in a pleading seeking an adjudication through an adversary hearing by denying access to the court at all."

This is especially true where, as here, the issues are complex and involve factual determinations.

An applicant for intervention by right under F.R.C.P. 24(a)(2) must:

(1) Claim an interest relating to the property or transaction that is the subject of the action; and

(2) Be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and

(3) Show that its interest is adequately represented by existing parties.

All three requirements must be met. *Commonwealth of Virginia v. Westinghouse Electric Co.*, 542 F.2d 214 (4th Cir. 1976).

■ Although there is no clear definition of what type of interest is sufficient to meet the first requirement, courts have found this element to be satisfied when the intervenor shows a "readily identifiable property interest". *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118 (5th Cir. 1970). "The 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Smuck v. Hobson*, 408 F.2d 175, 179 (D.C.Cir.1969). This standard has been leniently applied. A mere equitable lien on property has been found sufficient. *Calvert Fire Ins. v. Environs Development Corp.*, 601 F.2d 851 (5th Cir. 1979). In that case, a builder sought to intervene in a fire insurance company's declaratory judgment action dealing with the disposition of the fire insurance proceeds. The builder asserted that it had a contractor's lien on the destroyed building, that the owner had contracted to insure the premises and the builder's machinery and supplies stored therein for the builder's benefit, but had breached this contract by failing to do so. The district court denied the builder's motion to intervene. The Court of Appeals reversed and held that the builder had a right to intervene under F.R.C.P. 24(a)(2). The rationale was that the builder had alleged facts sufficient to claim an insurable interest in the property. This was based on two theories. First, a

contractor's lien alone would give it an insurable interest. Second, the owner's alleged breach of its promise to insure for the builder's protection would create an equitable lien on the insurance proceeds in the builder's favor, which too is an insurable interest. *Also see Spring Construction v. Harris*, 614 F.2d 374 (4th Cir.1980) (equitable right to subrogation deemed sufficient). In the present case, the Bank clearly claims an insurable interest in the property, and thus meets the first requirement for intervention by right.

■ When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented. Against this presumption the party seeking intervention must demonstrate either: (a) collusion between the representative and an opposing party, (b) that the representative has or represents an interest adverse to the intervenor, or (c) that the representative is incompetent or is otherwise not fulfilling its duty. *Commonwealth of Virginia v. Westinghouse Electric Corp.*, supra; *Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844 (5th Cir.1973); *United States v. International Business Machines Corp.*, 62 F.R.D. 530 (S.D.N.Y. 1974).

■ In *Coleman v. Capital v. Fidelity & Deposit Co. of Maryland*, 43 F.R.D. 407 (S.D.N.Y.1967), the court held that the intervenor was not adequately represented by the defendant because the defendant may not have been able to interpose the personal defenses of the intervenor. Similarly, in the case at bar, the plaintiff lacks standing to plead or prove the Bank's allegedly greater rights to the insurance proceeds.

■ Additionally, the Plaintiff is asserting the rights of a trustee in bankruptcy under 11 U.S.C. § 1107(a). Since a trustee in bankruptcy represents all the creditors of the bankrupt and may not represent any particular creditor, it cannot be said to be guarding the individual rights of the Bank. *In re David M. Hunt Construction Co.*, 3

B.R. 256 (Bankr.E.D.Pa.1980). In that case the debtor was a general contractor. The trustee sued the owner of property under the bankrupt's construction contract. The intervenor was a subcontractor. The court allowed intervention because the subcontractor asserted an equitable lien to the recovery on account of its nonpayment by the bankrupt on the job in question. The court reasoned that the intervenor's right to the proceeds was adverse to the claim of the general creditors, who were represented by the trustee. This theoretical adversity was enough to allow intervention. Here, although there appears to be no dispute that the Bank has a valid mortgage on the property and would prevail to the extent of its mortgage balance against general creditors' claims to the insurance proceeds, the theoretical adversity exists nonetheless. Therefore, the third requirement of Rule 24(a)(2) has been met by the Bank.

█ It is the requirement that the Bank show that it is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect its interest that causes the most concern. Although it is true that since the 1966 revision of Rule 24(a), it is no longer necessary for the movant to show that it would be "bound" under theories of res judicata, on the particular facts of this case, unless the Bank would be collaterally estopped from relitigating the question of arson, as a practical matter, the disposition of this action would not impair or impede the Bank's ability to protect its interest.

Because its preliminary independent research on this question was inconclusive, the Court requested the parties to brief the issue of whether the Bank is in privity with the debtor with respect to the debtor's cause of action against the defendant. If it is, then the theory of collateral estoppel would estop the Bank from relitigating the question of arson. Very little by way of case authority was shown to the Court on

this question. In *Ionian Shipping Co. v. British Law Insurance Co.*, 426 F.2d 186 (2d Cir.1970), the Court assumed that the intervenor was the beneficiary of a standard mortgage clause and therefore had rights superior to the plaintiff even in the face of intentional misfeasance by the plaintiff, and held that it was hornbook law that the intervenor would not be barred either by collateral estoppel or res judicata from litigating its rights in a separate proceeding. If the Bank's claim in this case is correct that it is indeed the beneficiary of a standard mortgage clause, or is entitled to the rights of someone who is, then clearly it would not be bound by collateral estoppel, and denial of intervention by right would be no impediment to the protection of its rights through a subsequent action. *Accord Better Valu Homes v. Preferred Mutual Insurance Co.*, 60 Mich.App. 315, 230 N.W.2d 412 (1975). On the other hand, in *Posner v. Firemans Insurance Co.*, 49 Ill.App.2d 209, 199 N.E.2d 44 (1964), it was held that the bank, which had the status merely of a loss payee, was collaterally estopped from bringing suit against the insurer where the insured's suit was barred by an affirmative policy defense. Thus, if this or another court were to hold that the defendant's theory of the Bank's rights is correct, then the Bank could find itself precluded in a subsequent action from relitigating an adverse determination on the question of arson. Such a preclusion would certainly rise to the status of an impairment or impediment to its ability to protect its interest. Indeed, this is precisely what the Defendant argued in its supplemental brief. Specifically, the Defendant stated its intention to preclude the Bank in any other action from relitigating issues decided in this case.[2]

Because all three of the requirements of Rule 24(a)(2) have been met by the Bank, it may intervene in this action by right.

---

**2.** Its brief stated: "Therefore, if the named insured, J.C. Wykoff and Associates, Inc., is determined to be barred from recovering under the policy as a result of arson, then Second National Bank would not be entitled to any recovery under the policy, since its right of recovery was totally dependent upon the named insured's right of recovery .... if Second National Bank is a loss payee, as contended by Aetna, then its claim rises or falls with the named insured."

Even if intervention by right under F.R.C.P. 24(a)(2) were unavailable, intervention by leave under F.R.C.P. 24(b) is appropriate here. That rule permits intervention, in the court's discretion, "(2) when an applicant's claim or defense and the main action have a question of law or fact in common." When exercising its discretion, the Court must consider whether allowing intervention would unduly delay or prejudice the adjudication of the original action. In this case, one of the Bank's principal claims is identical to that of the Plaintiff's—whether the Plaintiff committed arson. Of course, the Bank raised numerous other factual issues on its behalf in case the Court finds that arson is a good defense as against the Plaintiff. But these issues are contingent and secondary to the principal one of arson. Intervention will not unduly delay, prejudice or confuse the trial of the original action. The trial will first decide the arson issue. Once that is resolved, if necessary the trial will continue to the sub-issues raised by the Bank.

Furthermore, if intervention is denied and the Court ultimately rules against the Plaintiff, the Bank would have a substantial unsecured claim against the estate, which would have to be addressed in any plan of reorganization. However, if the Bank ultimately succeeded in a separate action against the Defendant, its claim would evaporate, necessitating the filing of an amended plan or a post-confirmation modification. Thus intervention would serve the interests of efficient administration of a Chapter 11 reorganization case.

Finally, even the case relied upon by the Defendant for the proposition that a mortgagee is not entitled by right to intervene in the mortgagor's lawsuit against the insurer stated that such intervention was appropriate by leave in such cases. *Ionian Shipping Co. v. British Law Insurance Co.,* 426 F.2d at 191–192.

For the reasons stated, the Bank's motion to intervene will be granted. The Bank may submit an order consistent with this opinion.