BANK OF ROCKVILLE CENTRE TRUST COMPANY, Plaintiff, *v.* LEWIS WARRINGTON BALDWIN, as Executor, etc., of WILLIAM H. BALDWIN, Deceased, Defendant.

First Department, June 2, 1933.

*Isidore Lapan* of counsel [*Frederick E. Goldsmith* and *Louis E. Felix*, attorneys], for the plaintiff.

*Carlile Bolton-Smith* of counsel [*Thomas E. Massie* with him on the brief; *Cravath, deGersdorff, Swaine & Wood*, attorneys], for the defendant.

MERRELL, J.   Under the agreed statement of facts herein the plaintiff is organized under the banking laws of the State of New York and under the supervision of the Superintendent of Banks of this State, having its place of business at Rockville Centre, Nassau county, N. Y., and is the owner of a first mortgage in the sum of $40,000 upon real property owned by Top Realty Corporation, located at Island Park, Nassau county, N. Y.   William H. Baldwin, now deceased, at the time of his death was the owner of a second mortgage on the same property in the sum of $10,000. Defendant, as executor of his estate, has succeeded to the rights of the deceased in said property.   Top Realty Corporation, to protect the buildings on the property from loss or damage by fire, obtained various policies of fire insurance for the benefit of the mortgagees and for its own benefit, and paid the usual premiums thereon. Two policies of fire insurance were issued by Lloyds, London, insuring from loss or damage by fire the property aforesaid.   The first of these policies was issued on June 30, 1931, and insured the property from loss or damage by fire in the sum of $12,750.   In the agreed statement of facts this policy is referred to as policy No. 1.   The premium upon the policy was paid by Top Realty Corporation, the owner of record of the premises.   A second policy, referred to in the agreed statement of facts as policy No. 2, was issued by Lloyds, London, to Top Realty Corporation insuring its said property in the sum of $14,500 for one year from January 4, 1932.

The present controversy involves the construction of said two policies issued by Lloyds of London, and particularly, the construction of the loss payable clauses contained in said policies.   While the exact wording in the two policies is not precisely the same, the same principle of construction is applicable to both.   Each policy contains, at the beginning, the statement that the premiums have been paid by Top Realty Corporation for loss or damage by fire of the property located at Island Park.   Immediately thereafter follows the statement: " Warranted same terms and conditions as and to follow the settlements of Firemen's of Newark."   There is then attached to each policy a printed form designated as the New York standard mortgage clause.   The form of such clause is identical in each policy, although the typewritten words completing said form differ somewhat.   In policy No. 1 it is stated: " Loss or damage, if any, under this policy shall be payable to Bank of Rockville Centre Trust Company as first mortgagee, and W. H. Baldwin, as second mortgagee (or trustee) as interest may appear." In policy No. 2 the wording is as follows: " Loss or damage, if any, under this policy shall be payable to Bank of Rockville Centre Trust Company as first mortgagee (or trustee) as interest may

appear." There is also attached to policy No. 1 a separate slip reading as follows: " Loss, if any, payable to Bank of Rockville Centre Trust Company, as first mortgagee, and W. H. Baldwin, as second mortgagee." Attached to policy No. 2 there is a separate sheet reading as follows: " Loss, if any, due to the insured under all the terms and conditions of this policy, to be payable to Bank of Rockville Centre Trust Company, as first mortgagee, W. H. Baldwin, as second mortgagee, as interest may appear." Then, on policy No. 2, there is another separate sheet, the part of which relating to loss payable reads as follows: " Loss, if any, payable to Bank of Rockville Centre Trust Company, as first mortgagee, and W. H. Baldwin, as second mortgagee." In compliance with the warranty required by Lloyds of London, Top Realty Corporation procured to be issued to it a policy of insurance by Firemen's Insurance Company of Newark for $5,000 upon the same property. In that policy the loss payable clause was clear and without ambiguity. That clause provided that the loss should be payable to Bank of Rockville Centre Trust Company as first mortgagee, and at the end of the long clause we find the words: " And then to W. H. Baldwin, as second mortgagee." Lloyds required proof of the existence of said policy before making payment.

On March 14, 1932, while both policies issued by Lloyds of London were in force and effect, as well as the policy issued by Firemen's Insurance Company of Newark, a fire occurred on the premises. Proofs of loss were duly filed by the insured with Lloyds of London, and after the loss had been adjusted a settlement was made on the two policies issued by Lloyds in a total sum of $10,037.65, which included the sum of $4,696.51 under policy No. 1 and $5,341.14 under policy No. 2. Lloyds of London then sent one check for the total sum, making the same payable to Top Realty Corporation, Bank of Rockville Centre Trust Company and W. H. Baldwin, as interest may appear. This controversy between the parties arises over the distribution of the sum so paid by the insurance company.

Plaintiff contends that since it holds the first mortgage on the premises for $40,000, and since the loss is payable as interest may appear, it is entitled to the full amount of the insurance paid. The defendant contends that under the terms of the policies he is entitled to share *pro rata* in such insurance by virtue of the mortgage which he holds against the property in the sum of $10,000. The defendant claims to be entitled to one-fifth of the amount of the insurance paid by Lloyds of London.

We are of the opinion that the plaintiff is entitled to the full amount of the insurance money so paid under the terms of the

policies in suit. We find no ambiguity in the words used in the policies, " as interest may appear." We are of the opinion that the word " interest " is not only indicative of the extent of the benefit or concern, but the nature and quality or kind of benefit or concern. In both policies in suit the nature and interest of both the plaintiff and defendant's testator is clear. In all cases the Bank of Rockville Centre Trust Company is described as the first mortgagee, and defendant's testator is described as the second mortgagee. The words in the policies amply describe the nature and interest of the beneficiaries for whom the policies were issued. The nature of the benefits that each of the parties is entitled to receive is clearly indicated by the terms of the policies describing the plaintiff as first mortgagee and defendant's testator as second mortgagee. We can find no uncertainty as to the extent and character of such interests. Therefore, there is no necessity to resort to extrinsic evidence to determine the nature and quality of the interest of the parties. Extrinsic evidence could only be required where an ambiguity appears as to what the interest is. In *Dakin* v. *Liverpool, London & Globe Ins. Co.* (77 N. Y. 600) a policy likewise contained the words, " as interest may appear." The interest of the party was not properly stated in the policy, and in that case the court held that where the clause expresses doubt as to the identity of the person who is to have the benefit of the contract, the identity of the person might be proven. At page 603 the Court of Appeals used the following language: " The phrase in this policy, ' as interest may appear,' is as applicable to Wood, as one of the insured, as to L. W. Moore & Co. It indicates that when the policy was filled up by the defendant, there was uncertainty as to his interest, or that for some reason it was not thought best to state it; and the use of the phrase gave the right to him to show what the fact was as to it, whenever the time came at which it was for his good to show it."

There can be no doubt that a first mortgage always has priority over a second mortgage to the full amount secured thereby. Therefore, the description contained in these policies of the nature of the interest of both plaintiff and defendant's testator is clearly indicative of the priority of plaintiff's claim as a first mortgagee. The interest designated is the nature and extent thereof existing at the time of the loss. A situation might be presented where, at the time of the loss, the interest of the respective mortgagees might be entirely different from the interest existing at the time of the issuance of the policies. The first mortgage might be reduced during the interval, and to that extent the interest of the second would be altered. But in the case at bar the interest of each remained the

same, and, in our opinion, the first mortgagee should be granted a preference to the full extent of its mortgage. In *Pitney* v. *Glens Falls Ins. Co.* (65 N. Y. 6, 13) in the opinion of the Court of Appeals it is stated: " But when the words ' as his interest may appear ' are added, something more seems to be intended. The language, though informal, points to an ownership in the wool of some kind. * * * If the words thus employed be ambiguous, or if the designation be so imperfect that it cannot be understood standing alone, extrinsic evidence may be resorted to in order to ascertain the meaning." Throughout these policies the plaintiff was designated as first mortgagee, and defendant's testator as second mortgagee. The nature of their interests is thus clearly indicated, the interest of the plaintiff being that of, the first mortgagee and the interest of the defendant's testator that of the second mortgagee. Each is to be paid from the insurance moneys in accordance with such interest.

However, another provision of the policies seems to us to remove all doubt as to what the policies mean. Even assuming that the provisions of the Lloyds policies were ambiguous in the wording of the loss payable clause in each, nevertheless, no extrinsic evidence is required to explain such ambiguity, because of the fact that each policy contained the statement: " Warranted same terms and conditions as and to follow the settlements of Firemen's of Newark." In each of the Lloyds policies reference is thus made to the provisions contained in a policy issued by the Firemen's of Newark. These references have the same effect as though the entire policy issued by the Firemen's of Newark, including the provisions contained in the loss payable clause therein, was incorporated in the policies issued by Lloyds. By such incorporation the terms of the Newark policy became part of the Lloyds policies. The reference to the Newark policy was clearly included to avoid any misapprehension as to the terms and conditions of the Lloyds policies. The Lloyds required that at the time of the loss the Firemen's of Newark company should insure the premises in the sum of $5,000. The loss payable clause contained in the policy issued by Firemen's of Newark provided that the " Loss or damage, if any, under this policy shall be payable to Bank of Rockville Centre Trust Company as first mortgagee (or trustee) as interest may appear * * * and then to W. H. Baldwin as second mortgagee." There can be no ground to dispute that the payment of the proceeds of the policy issued by Firemen's of Newark were first to be paid to the plaintiff to the amount of its interest, and if any remained that the same should then be paid to W. H. Baldwin, as second mortgagee. In *Lewis* v. *Guardian Fire & Life Assurance Co.* (181 N. Y. 392) the

policy in suit insured the mortgagor, loss, if any, payable to the mortgagee, as interest may appear. The court held that the mortgagee in such case might maintain an action in his own name and recover the whole amount payable under the policy. At page 398 of the opinion the Court of Appeals states: "Granting the right of the mortgagor to maintain such an action, it is clear that to the action the mortgagee must be a party, for payment by the terms of the policy is first to be made to him to the extent of his interest." The same doctrine was held in the courts of sister States, notably in *Lichtstern* v. *Forehand* (181 Wis. 216) and *Amory* v. *Reliance Ins. Co.* (208 Mass. 378).

The defendant contends that the mortgagor may insure the interest in property for the benefit of a person, even though such other person be a junior incumbrancer, and that the mortgagee for whose benefit the insurance was taken out will be entitled to the insurance paid. The defendant relies upon a decision of the Onondaga County Special Term of the Supreme Court, decided in 1874, in *Baltis* v. *Dobin* (67 Barb. 507), where the owner of a steam tug obtained a loan from the plaintiff and as security gave him a first mortgage on the tug. Later on, the owner obtained a loan from the defendant, and to secure such loan the owner gave the defendant a second mortgage on the tug. In order to further secure the first and second mortgagees the owner of the tug insured it for the benefit of the two mortgagees, the provision of the policy reading: "Loss, if any, payable to Frank J. Baltis and S. A. Dobin to amount of their interest." Such clause of the policy was entirely different from that found in the policies now under consideration. There no words designating any priority of interest were employed. Unquestionably each having an insurable interest, the owner could insure for the benefit of either one or for both of the mortgagees. Had only the defendant Dobin been mentioned, then Dobin would have been entitled to the proceeds of the policy, and the same would apply had Baltis alone been named. The court, however, held that the owner, who obtained the policy of insurance, intended that the loss, if any, should be payable to both mortgagees. The effect would have been the same had the provision of the policy read: "loss, if any, payable to Dobin and Baltis." Under such circumstances it must be conceded that both having insurable interests would be entitled to share *pro rata* in the insurance moneys paid under the policy. No such situation is presented in the case at bar.

Inasmuch as plaintiff's mortgage is in the sum of $40,000 and the amount of the loss is less than the amount of said mortgage, the plaintiff claims to be entitled to the entire proceeds of the

check, and demands judgment in the sum of $10,037.65, less the adjuster's commission, and the defendant demands judgment that he be allowed one-fifth of the sum of $10,037.65, less adjuster's commission.

We are of the opinion that plaintiff is entitled to the full amount claimed, and that judgment should be rendered in favor of plaintiff for $10,037.65, less adjuster's commission. No costs are allowed either party, in accordance with their stipulation.

FINCH, P. J., O'MALLEY, SHERMAN and TOWNLEY, JJ., concur.

Judgment directed in favor of plaintiff for $10,037.65, less adjuster's commission, without costs. Settle order on notice.