**BACCHUS ASSOCIATES, Plaintiff,**

v.

**HARTFORD FIRE INSURANCE COMPANY and A.B. Guari, Inc., Defendants.**

**No. 89 Civ. 3834 (SWK).**

United States District Court, S.D. New York.

April 12, 1991.

Karsch & Meyer, New York City (Gary Meyer, of counsel), for plaintiff Bacchus Associates.

Bigham Englar Jones & Houston, New York City (Donald T. Rave, Helen M. Benzie, of counsel), for defendant Hartford Fire Ins. Co.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

This marine insurance case arises from the destruction of several large shipments of fruit as a result of a United States and Canadian government embargo of fruit from Chile. The question presented is whether defendant insurer may deny coverage based on certain exclusions that were named but not set forth in the policy issued to the insured.

## BACKGROUND

Plaintiff Bacchus Associates ("Bacchus") imports fresh produce into the United States and Canada on a consignment basis. On March 16, 1987 it purchased an all-risk policy of marine insurance (the "Policy") from defendant Hartford Fire Insurance Company ("Hartford"). Bacchus' principal, John Mangia, procured that Policy through an insurance broker, defendant A.B. Guari (hereinafter "Guari"). Coverage commenced on February 14, 1987 and was to run continuously thereafter.

During the period February 19 through March 10, 1989, Bacchus shipped from Chile to Philadelphia, Pennsylvania approximately $1 million worth of honeydew melons, grapes, peaches, pears, nectarines, plums, and Granny Smith apples. On or about March 13, 1989, the United States Food and Drug Administration issued orders detaining and embargoing Chilean fruit as a result of a finding that certain fruit from that country had been tampered with.[1] The government then directed that all such fruit then in the hands of importers, wholesalers and retailers would be de-

1. On March 6, 1989, the United States Embassy in Santiago received an anonymous telephone call indicating that unidentified fruit shipped from Chile to the United States had been poisoned. Two grapes were found to contain cyanide.

stroyed. Although no Bacchus product was found to contain cyanide, all of the fruit it had in transit to the United States at that time either decayed or had to be dumped under the terms of the embargo.

Bacchus made a claim under the Hartford policy to recover damages for the fruit that spoiled or had to be destroyed. Hartford denied reimbursement under the policy, on the basis that three provisions in Clause 9 of the policy operated to exclude coverage of such losses as occurred here. Those provisions are entitled "Free of Capture and Seizure Warranty," (hereinafter "F.C. & S."), "Endorsement for Open Policies (Cargo) Strikes, Riots & Civil Commotions" (the "S.R. & C.C. Endorsement"), and "Delay Warranty."

The general risk provision of the policy affords insurance for

> Fruits and Produce, shipped under deck ... against all risks of Physical Loss or damage from any external cause, excluding loss damage or expense caused by or resulting from Decay, deterioration, and/or spoilage of the goods, and excepting such risks as are excluded by the F.C. & S. and Strike Clauses.

Marine Open Cargo Policy, attached as Exhibit G to Affidavit of Helen M. Benzie, dated September 14, 1990 (hereinafter "Benzie Aff."), at ¶ 5(d).

The F.C. & S. Clause provides in relevant part:

> Notwithstanding anything herein contained to the contrary this insurance is warranted free from:
>> (a) capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise....

Policy, ¶ 9(M)(I). The S.R. & C.C. warranty provides that:

> Notwithstanding anything herein contained to the contrary this insurance is warranted free from loss, damage or expense caused by or resulting from:
>> * * * * * *

> (b) vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional.

*Id.* at ¶ 9(M)(II). This provision is also subject to an S.R. & C.C. Endorsement. That endorsement reads in relevant part:

> This insurance also covers:
>> * * * * * *

>> (2) destruction of, or damage to, the property insured directly caused by vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional; PROVIDED that any claim to be recoverable under this subsection (2) be not excluded by the FC & S warranty in the policy to which this endorsement is attached.
>> * * * * * *

> Nothing in this endorsement shall be construed to include or cover any loss, damage, deterioration or expense caused by or resulting from:
> (a) change in temperature or humidity.
>> * * * * * *

> (c) delay or loss of market.

Form No. 9, attached to the Policy annexed as Exhibit G to the Affidavit of Helen M. Benzie.

The Delay Warranty provides:

> Warranted free of claim for loss of market or for loss, damage or deterioration arising from delay, whether caused by a peril insured against or otherwise.

Policy at ¶ 9(M)(III).

However, an attachment to the contract provides for the substitution of another group of clauses for these paragraphs 9(M)(I), 9(M)(II), and 9(M)(III), reproduced

above (the "Clause 9 provisions"). Endorsement No. 2, supplied by Hartford, deletes the Clause 9 provisions and replaces them with the American Institute Cargo Clauses (February 1949) with F.C. & S. Warranty (April 3, 1980) and the Strikes Riots and Civil Commotions Clause (April 3, 1980).[2] Endorsement No. 2 reads in relevant part as follows:

It is hereby agreed by and between the insured and the Company that Clause 9 of the policy of which this endorsement forms a part is deleted and the following clauses are substituted therefor:

(1) American Institute Cargo Clauses (February 1949) with F.C. & S. Warranty (April 3, 1980) and Strikes, Riots and Civil Commotions Warranty (April 3, 1980).

(2) American Institute Marine Extension Clauses (April 1943).

(3) The South American 60–Day Clause.

Policy, Endorsement No. 2.

Endorsement No. 2 clearly states that Clause 9 is deleted and replaced by new clauses. However, for reasons that are not clear, the replacement clauses are not actually attached to Endorsement No. 2, nor are their terms stated therein. Endorsement No. 2 moreover does not contain any language purporting to incorporate these clauses by reference.

When Bacchus put in its claim for the losses it sustained, Hartford denied coverage on the basis of the exclusions contained in Endorsement No. 2. Bacchus then filed this lawsuit. Presently before the Court is Hartford's motion for summary judgment.

The parties to this action are essentially in agreement about the critical facts. Plaintiff claims in its Complaint that its loss is due to the goods becoming "unmarketable and/or worthless" (Complaint ¶ 19), and has also stated on at least one occasion that the fruits were "spoil[ed]" and "unsalable." Letter of Gary Meyer, Esq. to Edward G. Martano, Manager, Ocean Marine Claims Dept., Hartford Fire Ins. Co., dated May 8, 1989 (attached as Exhibit B to Ben-

zie Aff.). Defendant Hartford in turn appears to concede that it failed to attach to its policy those provisions allowing for the exclusion of such items of loss from its coverage. However, Hartford maintains nonetheless that the mention of those "specific, identifiable clauses" issued by the American Institute of Marine Underwriters serves to incorporate those clauses into the contract by reference. Reply Mem. at 1. Alternatively, Hartford argues that the language of the clauses to which it intended to refer in the Endorsement No. 2 is identical to the language that appears in Clause 9 of the printed policy but which Endorsement No. 2 purports to delete. Accordingly, it asserts, these clauses should be applied to preclude Bacchus from recovering under the policy for the losses associated with the embargo.

The juicy questions before the Court are: (1) whether, as a matter of law, Hartford is entitled to the benefit of incorporation of these clauses as a matter of law, despite the fact that they were not attached to the policy; (2) if Hartford is not, whether the Court should go beyond the four corners of the document and inquire into the intent of the parties; and (3) if the Court does so, whether there are triable issues as to the parties' intent surrounding the disputed exclusions.

## DISCUSSION

### Standards for Summary Judgment

■ Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R. Civ.P. 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

---

**2.** The other clauses referred to in Endorsement No. 2 are not relevant to this motion.

108

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).[3] The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Speculation, conclusory allegations and mere denials are not enough to raise genuine issues of fact. To avoid summary judgment, enough evidence must favor the non-moving party's case such that a jury could return a verdict in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (interpreting the "genuineness" requirement).

Incorporation of the Clauses by Reference

Documents may be incorporated into insurance policies by explicit reference or by annexation or attachment to the policy. *See Couch on Insurance* 2d at § 4:46 (rev. ed.) (hereinafter *"Couch"*). However, such reference must be "in plain terms." *Id.* Judge Weinfeld has stated the point similarly: "A reference in a contract to another writing, sufficiently described, incorporates that writing." *Lowry & Co. Inc. v. S.S. Le Moyne D'Iberville*,

253 F.Supp. 396, 398, 399 (S.D.N.Y.1966), *appeal dismissed*, 372 F.2d 123 (2d Cir. 1967). In *Lowry*, Judge Weinfeld found that certain strike and arbitration clauses were incorporated into the charter party, despite their not being expressly set forth, because of the inclusion of the following language: "Clauses 16 to 33 both included as attached as well as * * * centrocon strike and arbitration clauses to be deemed fully incorporated in this charter party and form part of same." *Id.* at 397. The Court then found that the terms of the charter party were in turn incorporated into the bill of lading. Judge Weinfeld held that while the words used—"all conditions and exceptions as per charter party dated Paris 17th September 1963"—were not as precise as if the parties had used the words "incorporated by reference" *in haec verba*, they were nonetheless sufficiently explicit to warrant a finding of incorporation. *Id.* at 398–399.

*Lowry* is distinguishable from the instant case because nowhere on Endorsement No. 2 is it stated, precisely or otherwise, that the terms of the clauses listed thereon are to be incorporated by reference into the policy.

The other cases cited by Hartford are similarly inapposite. For example, in *Brandyce v. Globe & Rutgers Fire Ins. Co.*, 252 N.Y. 69, 168 N.E. 832 (1929), defendant issued to Brandyce three certificates of insurance, while retaining the actual policy in its office.[4] The certificates clearly stated on their face that they were "subject to the conditions of the policy and contract of insurance," and omitted many terms critical to an insurance policy, including which risks were insured and whether the insurance was an open policy or a valued one. At issue was the one year statute of limitations, which was clearly stated in the policy itself but not mentioned in the

---

**3.** The moving party may rely on the evidence in the record to point out the absence of genuine issues of material fact. *Celotex, supra,* 477 U.S. at 323, 106 S.Ct. at 2552. The moving party does not have the burden of providing evidence to negate the non-moving party's claims. *Id.* As the Supreme Court recently noted, "whether the moving party accompanies its summary judgment motion with affidavits, the motion

may, and should, be granted so long as whatever is before the court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

**4.** Such was the "practice prevailing among marine insurance companies." *Id.,* 252 N.Y. at 71, 168 N.E. 832.

certificates. After suffering a casualty loss, plaintiff filed suit more than one year later. Defendant moved to dismiss on the basis of time bar. The court granted the motion, finding that the policy kept in the insurer's office constituted the contract between the parties. The certificates standing alone, with their absence of a limitation period, did not create a different contract between the parties, because the certificates did not purport to be insurance policies, nor did they state all of the conditions of a policy.

*Brandyce* is also distinguishable from the case at bar. Here, the policy did purport to be a contract, signed by both parties, with recitals of definite terms, conditions, and consideration exchanged. The policy as it stands is a contract, unlike the certificates of insurance issued to Brandyce, which, because of the absence of critical terms, could not have been so construed.

Hartford also cites *Hamdi & Ibrahim Mango Co. Ltd. v. Reliance Ins. Co.*, 291 F.2d 437 (2d Cir.1961), in support of its position. It claims that this case stands for the proposition that an exclusionary clause in the American Institute of Marine Underwriters War Risk Form, which was only referred to by name in the certificates of insurance, but the terms of which were not spelled out in either the certificates or the open policy, is fully applicable against the insured party. The Court disagrees with Hartford's interpretation of the case. First, it is not evident from the facts as stated in the Court's opinion that the actual War Risk Form was not supplied to plaintiff insured. Moreover, even if it was not, the Court refers to the policy as having a "provision for written amendments." The

Court did not give the wording of the Amendments clause, but it is possible that that clause operated as an agreement between the parties to refer to such forms by title rather than by spelling out the provisions.[5] Accordingly, this Court does not read *Hamdi & Ibrahim Mango Co.* to stand for the general proposition that insurance firms need not supply the terms of exclusions to their coverage so long as they refer to an American Institute of Marine Underwriters exclusion clause by name.

 Hartford's mere reference to the clauses in Endorsement No. 2 fails to "sufficiently describe" the terms of the exclusions sought to be incorporated. *See Lowry*, 253 F.Supp. at 398. Perhaps Hartford's invocation of these clauses by name would be sufficient to a person in the marine insurance business, but the clauses are not necessarily part of the daily vocabulary of a consigner of fruit.[6] It would not necessarily be clear to such a reader of the policy what are the terms encompassed by those clauses in Endorsement No. 2. Under New York law,[7] the ambiguity in the contract will be construed against the insurer, which supplied it. *See Westchester Resco Co., L.P. v. New England Reinsurance Corp.*, 818 F.2d 2, 3 (2d Cir.1987) (citing *Breed v. Insurance Co. of North America*, 46 N.Y.2d 351, 353, 413 N.Y.S.2d 352, 354, 385 N.E.2d 1280, 1281–82 (1978)) (other citations omitted). Accordingly, the Court finds that Hartford is not necessarily entitled, as a matter of law, to the benefit of incorporation by reference of the clauses contemplated by Endorsement No. 2.

### Relevance of Parties' Intent

 The parties disagree as to what route the Court should take in the event it

---

**5.** There was no such clause in the policy *sub judice.*

**6.** Indeed, the principal of this particular fruit consigner has testified that he is unfamiliar with the insurance business:

> Q. When did you first deal with Mr. Guari [the insurance agent] concerning Bacchus Associates?
> A. At the inception of Bacchus.
> Q. What was the reason for you contacting Mr. Guari?

> A. For insurance.
> Q. What types of insurance did you ask him to obtain for you?
> A. *I don't know anything about insurance.* I guess to get the insurance that would be necessary for me to conduct business in a proper way.

Deposition of John Mangia, date unstated (attached as Exhibit D to Benzie Aff.), at 31–32 (emphasis added).

**7.** The parties do not dispute that New York law applies.

finds the contract ambiguous. Hartford argues that the Court should look to the intent of the parties, as illuminated by their actions in forming the contract, to determine whether the exclusions in Endorsement No. 2 were contemplated by the parties. Reply Br. at 11 (citing *Buckeye Cellulose v. Atlantic Mutual*, 643 F.Supp. 1030, 1042–43 (S.D.N.Y.1986)). Bacchus argues to the contrary that Hartford's deletion of the original exclusions found in Clause 9, taken together with Hartford's failure to include the new version of the exclusions referred to in Endorsement No. 2, as a matter of law renders both sets of exclusions ineffective. Under this theory, Hartford would be precluded from asserting these exclusions as a defense and would not be permitted to deny coverage under the exclusions.[8] In support of this proposition, Bacchus cites *Hartford Accident & Indemnity Co. v. Shaw*, 273 F.2d 133 (8th Cir.1959); *Industrial Risk Insurers v. New Orleans Public Service, Inc.*, 666 F.Supp. 874 (E.D.La.1987); *American Family Mutual Insurance Co. v. Claggett*, 472 S.W.2d 669 (Mo.Ct.App.1971); and *Moore v. Home Indemnity Co.*, 274 A.2d 705 (Del.Super.Ct.1971).[9]

█ As between the above theories, the Court regards Hartford's approach as fairer and more consistent with New York's general principles of contractual interpretation and construction. Under New York law, when a written instrument is ambiguous, "the problem of analysis of the instrument is to determine 'what is the intention of the parties as derived from the language employed.'" *Mallad Construction Corp. v. County Federal Savings & Loan Ass'n*, 32 N.Y.2d 285, 291, 344 N.Y.S.2d 925, 930, 298 N.E.2d 96, 100 (1973) (citing 4 Williston, Contracts, § 600, at p. 280)). When the words of the policy do not clearly describe the nature and interest of the parties, courts applying New York law are to look to extrinsic evidence to discern the intent of the parties. *See Bank of Rockville Centre v. Baldwin*, 238 A.D. 354, 265 N.Y.S. 343, 344 (1st Dept.1933).

Bacchus cites four cases for the proposition that when an insurer neglects to attach the terms of an exclusion to a policy, the exclusion should not, as a matter of law, be applied as against the insured. However, only two of them, *Industrial Risk Insurers* and *American Family Mutual Insurance Co.*, explicitly address the question of whether the court should consider the intent of the parties in that situation. Of those, one court answers in the affirmative, the other in the negative.

In *Industrial Risk Insurers*, the court found that an insurance contract's reference to "Code 93111," denoting a certain modification of an insurance policy issued to the City of New Orleans, was insufficient to incorporate that provision as a matter of law. The court determined after a bench trial, however, that the modification denoted by the code 93111 would apply against the City nonetheless. The court found that the City of New Orleans was a sophisticated bargaining party, represented by its Insurance Advisory Committee, the City Attorney, and an experienced insurance agent, and that it was therefore on equal footing with the insurers. 666 F.Supp. at 881. The court further found that the representatives and agents of the City fully understood and intended for the policy to read as modified by the code 93111. *Id.* The court took as another indication of the parties' intent the fact that the amount of the premium that would have been charged in the absence of the code 93111 exclusion would have been five times greater than the premium the City actually paid. *Id.*

By contrast, the court in *American Family Mutual* expressly decided in a similar situation that it would not consider the parties' intent and notice. In that case, defendant sought automobile liability insurance from plaintiff insurer, and orally re-

---

8. Bacchus does not move for summary judgment, although adopting its theory would be tantamount to a grant of summary judgment in Bacchus' favor on this issue. The parties have not fully briefed the issue of whether the policy, as read exclusive of both the Clause 9 provisions and Endorsement No. 2, would be sufficient to deny coverage.

9. Bacchus indicates that there is no New York authority involving this issue. Pl. Mem. at 7.

quested that her son, Carl Claggett, be excluded from coverage. The insurer typed the mother's name and address on the "facing sheet" of the policy, along with a description of her automobile. Below that was typed "Excluded driver on End. 43: Carl L. Claggett." Other endorsements were attached to the policy, but none bore a number 43, nor referred to an excluded driver. The son subsequently drove the insured car, with the mother's permission, and was involved in a collision, injuring his two passengers. The insurer sued for a judicial declaration freeing it from liability under the excluded driver clause. The Missouri Court of Appeals held that "the words 'Excluded driver on End. 43' made the purported exclusion meaningless in the absence of any such endorsement." 472 S.W.2d at 670. The court reasoned that "[s]uch an endorsement might have fully excluded Carl Claggett under all conditions, or only under certain described circumstances. Without the endorsement no one can say." *Id.*

Addressing the issue of Mrs. Claggett's intent to exclude her son, the court further held:

Plaintiff [insurer] further contends that when the policy was issued Mrs. Claggett orally agreed Carl Claggett was an excluded driver. Mrs. Claggett knew only that the face of the policy carried the notation 'Excluded driver on End. 43: Carl L. Claggett.' She knew nothing of any endorsement issued or to be issued giving life to that notation. Absent the endorsement the insurer cannot now graft it onto the policy.

*Id.*

This Court favors the *Industrial Risk Insurers* approach because it is more equitable. Although an insured should not be held accountable for an exclusion of which it was unaware and for which it had not bargained, it would similarly be unfair to put the insured in a better position than it would have been, had the insurer actually attached the terms of the exclusion to the policy. There is the possibility in this case, as in *Industrial Risk Insurers,* that the insured or its authorized agent in this case did bargain for the exclusions represented by the notations on Endorsement No. 2,

and perhaps paid a lower premium as a result. Under those circumstances, the Court would not reward Bacchus with a benefit exceeding its bargain. The doctrine of *contra proferentem* is strong enough to enable plaintiff to survive Hartford's summary judgment motion, but it does not take plaintiff all the way to summary judgment in its favor.

Therefore, under established principles of fair dealing under New York law, the Court will inquire whether, on defendants' motion for summary judgment, there is disputed evidence going to the parties' intent. *Mallad, supra,* 344 N.Y.S.2d at 930, 298 N.E.2d at 100; *see Hartford Accident & Indemnity Co. v. Weslowski,* 33 N.Y.2d 169, 350 N.Y.S.2d 895, 898, 305 N.E.2d 907, 909 (1973); *Bank of Rockville Centre,* 265 N.Y.S. at 344.

Evidence of the Parties' Intent

 Summary judgment is normally inappropriate when a contract term is ambiguous, because a triable issue of fact usually exists as to its interpretation. *See Leberman v. John Blair & Co.,* 880 F.2d 1555 (2d Cir.1989); *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985). Thus if there is conflicting evidence regarding the parties' intent, the district court may only identify the issues at the summary judgment stage, not resolve them. *See Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9–10 (2d Cir.1983). When the parties' intent is unclear, summary judgment may nevertheless be warranted when the parties do not present conflicting evidence of intent or when the movant presents evidence which is uncontradicted. *Burger King Corp. v. Horn & Hardart Co.,* 893 F.2d 525 (2d Cir.1990).

 In the present case, Hartford, the moving party, has the burden of showing the absence of genuine issues of material fact going to the intentions of the parties with respect to the exclusions contained in Endorsement No. 2. As to the issue of Bacchus' intent, Hartford has produced uncontradicted evidence showing that an insurance brokerage firm called D.J. Colby, Inc. requested and procured from Hartford, on Bacchus' behalf, an all-risk policy exclusive of decay, deterioration and spoi-

lage coverage. *See* Exhibit I, Exhibit I–1, and Exhibit I–2 (Carr–Doran letter, dated February 13, 1987), attached to Benzie Aff.[10]

However, this uncontradicted evidence does not suffice to demonstrate Bacchus' intent, because Bacchus denies knowing D.J. Colby, Inc. or doing business with Hartford through such a firm. Bacchus Rule 3(g) Counterstatement, ¶ 8. Mangia, in the deposition excerpt supplied to the Court, denies any familiarity with a company known as D.J. Colby. Mangia Dep. at 34. He further indicates that all of his communications with Hartford took place through defendant Guari or Guari's partner Zelig Wynn. *Id.* at 31.

Of the documents Hartford has introduced, purporting to show that Bacchus itself requested exclusion for decay, spoilage and deterioration, every one of them lists the name of the broker purporting to represent Bacchus as D.J. Colby, Inc. *Id.*[11] Because there is an issue as to whether the Colby firm was authorized to represent Bacchus, the Court may not, on a summary judgment motion, impute the intentions of D.J. Colby, Inc., to its purported principal. *See Cantor v. Life Alert, Inc.*, 655 F.Supp. 673, 680 (S.D.N.Y.1987) (agent acts "for the benefit of, with the knowledge and consent of, and under some control by, the principal") (citing *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir.1981)); *In*

*re Shulman Transport Enterprises, Inc.*, 744 F.2d 293, 295 (2d Cir.1984).

The Court finds that Mangia's deposition testimony raises a genuine factual issue surrounding this purported agency relationship. This issue is material to the question of the parties' intent, a question that is central to the resolution of this case. Accordingly, the Court holds that summary judgment is inappropriate at this time.

The Court sincerely hopes that this pear of litigants will not be melon-choly about the outcome of this motion. In the end, the Court is confident that the parties will receive their just desserts.

## CONCLUSION

The disputed exclusions were not, as a matter of law, incorporated into the policy by reference. However, the intent of the parties is relevant to determining whether those exclusions are applicable. There are genuine issues of material fact as to the parties' intent surrounding the disputed exclusions.

For the aforementioned reasons, Hartford's motion for summary judgment is denied.

SO ORDERED.

---

10. Exhibit I–1 appears to be handwritten notes reflecting discussions about sale of an insurance policy between Bacchus and Hartford indicating that the insurer would cover "all risk conditions, excluding decay, spoilage & deterioration." Page 1 of that exhibit is entitled "Quote Sheet," and indicates that an agent by the name of Chuck Carr of D.J. Colby Co. requested prices on coverage on behalf of Bacchus for "A/R excl. decay deterioration & spoilage." (The Court presumes that "A/R" signifies an all-risk policy.) Another handwritten page bears the name Bacchus at the top, several details about a fruit insurance contract, again with the notation "A/R excl. decay spoilage & deterioration." *Id.* at 2. Exhibit I–2 is a letter from Charles E. Carr of D.J. Colby, Inc. to Arthur Doran of Hartford's Marine Department, requesting that Doran "please issue open ocean cargo policy for this insured," referring to Bacchus Incorporated. The letter sets forth certain major terms and conditions of the policy and ends with the notation "Coverage: All risk excluding decay, spoi-

lage and deterioration." Exhibit I–3 is a Doran's return letter to Carr, which appears to have been a cover letter accompanying the mailing of an insurance contract on March 16, 1987. Hartford's Marine Manager testifies in an affidavit that D.J. Colby, Inc., was an insurance broker acting on behalf of Bacchus. Affidavit of Ellen C. O'Connor, dated September 13, 1990 (attached as Exhibit I to Benzie Aff.) at ¶¶ 3 and 5.

11. Hartford's counsel, in its opening brief, does attribute one such document directly to Arthur Guari. *See* Memorandum of Law in Support of Motion for Summary Judgment, at 15. That document, which Hartford's counsel claims is a note sent to Hartford by Guari, bears the clear marking "All risk conditions, excluding decay, spoilage & deterioration." Exhibit H, attached to Benzie Aff. However, nowhere on that document does Guari's name appear, and the Court notes that under the "Company" line is the notation "D.J. Colby, Inc." with an address.